O

# United States District Court
# Central District of California

| | |
|---|---|
| ARCONA, INC., <br><br> Plaintiff, <br><br> v. <br><br> FARMACY BEAUTY, LLC, et al., <br><br> Defendants. | Case No. 2:17-cv-7058-ODW (JPRx) <br><br> **ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS [153]** |

## I.   INTRODUCTION

Plaintiff Arcona, Inc. sued Farmacy Beauty LLC and its officers (collectively, "Farmacy") for various claims related to Farmacy's use of Arcona's trademark "EYE DEW." The Court granted summary judgment in favor of Farmacy on Arcona's counterfeiting claim because, apart from the use of the phrase "EYE DEW," the two products look nothing alike. Pending before the Court is Farmacy's renewed motion for attorneys' fees and costs. (Mot., ECF No. 153). For the reasons discussed below, the Court **GRANTS** Farmacy's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

In 2015, Arcona registered the trademark "EYE DEW" for its cosmetic skin creams. (First Amended Compl. ("FAC"), Ex. 1, ECF No. 34-1.) The trademark registration provides that the "mark consists of standard characters without any claim to any particular font, style, size, or color." (*Id.*) Arcona's EYE DEW product (pictured below) is tall, slim, cylindrical, and bears the "ARCONA" housemark on its bottle and outer packaging.




In 2015, Farmacy began selling an "EYE DEW" eye cream. Farmacy's EYE DEW product (pictured below) featured the company's housemark and an image of an echinacea plant on its outer packaging. The product was contained in a short, wide, white jar, with a wood-grained top.



2

In September 2017, Arcona brought claims against Farmacy for: (1) trademark counterfeiting; (2) trademark infringement; (3) unfair competition under Section 43(a) of the Lanham Act; (4) unfair competition under California state law; and (5) unfair competition under California common law. (FAC.) At Arcona's request, the Court dismissed with prejudice its claims for trademark infringement and unfair competition. On March 19, 2018, the Court granted Farmacy's motion for summary judgment on Arcona's counterfeiting claim, finding that "[t]he only similarity between the two products are that they both contain the phrase 'EYE DEW.'" (Order Granting Mot. for Partial Summ. J. 6, ECF No. 129.) The Court also found it "implausible that a consumer viewing [Farmacy's] EYE DEW product would be tricked into believing that the product is actually one of [Arcona's] EYE DEW products." (*Id.* at 7.)

Arcona timely appealed, and the Ninth Circuit affirmed the Court's decision to grant summary judgment in favor of Farmacy. (*See* Op., ECF No. 151); *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020), *petition for cert. filed*, Apr. 13, 2021. While Arcona's appeal was pending, Farmacy moved for attorneys' fees. The Court denied Farmacy's motion without prejudice, finding it appropriate to defer consideration of the motion until after resolution of the appeal. Now, Farmacy again requests an award of attorneys' fees and costs.

### III. LEGAL STANDARD

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see id.* ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to be 'exceptional.'"). A district court analyzing a request for fees under the Lanham Act should look to the "totality of the

circumstances" to determine if the case was exceptional. *Id.*; *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc) (same). To assess whether a case is "exceptional," courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* The party requesting fees under the Lanham Act must demonstrate an entitlement to fees by a preponderance of the evidence. *SunEarth*, 839 F.3d at 1181.

## IV. DISCUSSION

The parties do not dispute that Farmacy was the prevailing party in the underlying litigation. Thus, the Court first focuses its inquiry on whether this case was exceptional, entitling Farmacy to attorneys' fees under the Lanham Act.

### A. Exceptional Case

Farmacy contends that this case was exceptional because Arcona asserted a "frivolous" counterfeiting claim so that it could "escalate the case" and seek enhanced statutory damages of $2 million. (Mot. 10–13.) Specifically, Farmacy argues that "Arcona could not reasonably have believed [Farmacy] engaged in counterfeiting" when the two products look nothing alike and Farmacy's product includes the company's housemark, among the many other differentiating features. (*Id.* at 11.) Courts in this district have held that a party's litigating position must be objectively meritless for a case to be exceptional under the *Octane* standard. *See Cambrian Sci. Corp., v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1115 (C.D. Cal. 2015). A party failing to raise "debatable issues" supports a finding that a case was exceptional. *See Caiz v. Roberts II*, No. CV 15-09044 RSWL (AGRx), 2017 WL 830386, at *4 (C.D. Cal. Mar. 2, 2017).

The Court agrees with Farmacy—Arcona's counterfeiting claim was meritless. In its moving papers, Arcona advanced a disingenuous interpretation of the federal trademark statutes in advocating its counterfeiting claim. "It is a fundamental canon

of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Arcona*, 976 F.3d at 1078 (quoting *Sturgeon v. Frost*, 136 S. C.t 1061, 1070 (2016)). The plain language of 15 U.S.C. § 1114 provides a cause of action for counterfeiting and damages for a person's commercial use of a registered mark that is "*likely to cause confusion*." (emphasis added). Despite the plain language of Section 1114, Arcona advocated a groundless position that counterfeiting does not require a likelihood of confusion. (*See* Order Granting Mot. for Partial Summ. J. 5–7.) In fact, the Ninth Circuit's opinion highlights the frivolousness of Arcona's position:

> Perhaps recognizing that the two products look little like each other, Arcona argues that a counterfeiting claim does not require a likelihood of confusion. It points to two statutory provisions establishing various remedies for counterfeiting that do not mention "likelihood of confusion." . . . [However] even the two counterfeiting remedies provisions cited by Arcona underscore that a defendant is liable only if use of a counterfeit is *"likely to cause confusion."*

*Arcona*, 976 F.3d at 1078 (emphasis added).

Nevertheless, Arcona insists that its counterfeiting claim was reasonable because, prior to this case's appeal, the Ninth Circuit never "expressly held that a counterfeiting claim requires a likelihood of confusion." (Opp'n 4, ECF No. 156 (citing *Arcona*, 976 F.3d at 1079).) But here, too, Arcona advances an illogical position. Simply because the Ninth Circuit never *expressly* stated that a counterfeiting claim requires a likelihood of confusion, does not mean that it was reasonable for Arcona to vigorously litigate a counterfeiting claim based on an absurd interpretation of the trademark statutes. Indeed, in its opinion, the Ninth Circuit makes clear that "Section 1114 addresses both trademark infringement *and* counterfeit claims, and [the court] ha[s] repeatedly held that the plain language of Section 1114 requires a likelihood of confusion for a trademark infringement claim." *Arcona*, 976 F.3d at 1079 (emphasis added). So although the Ninth Circuit never *expressly* stated a

*counterfeiting* claim requires a likelihood of confusion, "*there is nothing in the statutory language of Section 1114 that suggests that a counterfeit claim should be construed differently from an infringement claim.*" *Id.* (emphasis added). In other words, that a counterfeiting claim requires a likelihood of confusion flows directly from the statutory language and is so obvious that, prior to this case, parties generally did not waste judicial resources litigating the issue. *See generally id.*

In sum, Arcona's contention that Farmacy's "EYE DEW" product was a counterfeit was meritless; and looking at the totality of the circumstances the Court finds this case exceptional. Accordingly, Farmacy is entitled to attorneys' fees under the Lanham Act. *See* 15 U.S.C. § 1117(a).

**B.     Attorneys' Fees**

Next, the Court turns to whether Farmacy's request for $824,322.03 in attorneys' fees is reasonable. When attorneys' fees are awarded under § 1117(a), the amount of the fee award is subject to the Court's discretion. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984). To calculate the fee award, the Court determines "the number of hours reasonably expended on the litigation" and multiplies that number "by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendants seek attorneys' fees based on the following rates and reported hours from September 2017 through April 2019:

| Timekeeper | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Jeff Joyner (Shareholder) | $675 | 264.1 | $161,856.65 |
| John Kim (Shareholder) | $675 | 179.6 | $105,242.66 |
| Lisa Li (Associate)[2] | $450 | 66.4 | $26,755.00 |
| Colin Fraser (Associate) | $450 | 422.5 | $183,992.04 |

---

[2] Since this case was initiated, Lisa Li and Colin Fraser have been promoted to the rank of "Shareholder," and Shauna Norton, Bethany Rabe, and James Ryerson have been promoted to "Of Counsel." (Decl. of Colin W. Fraser ("Fraser Decl.") ¶ 23, Ex. E, ECF Nos. 153-2, 153-3.)

| | | | |
|---|---|---|---|
| Shauna Norton (Associate) | $328 | 11.3 | $3,706.40 |
| Matthew Demartini (Associate) | $295 | 60.2 | $18,454.31 |
| Jason Hicks (Associate) | $365 | 6.4 | $2,336.00 |
| Jennifer Kim (Associate) | $260 | 8.8 | $2,288.00 |
| Bethany Rabe (Associate) | $375 | 21 | $7,878.00 |
| James Ryerson (Associate) | $450 | 742.6 | $298,343.99 |
| Adam Masarek (Research Attorney) | $185 | 1.1 | $203.50 |
| Trista Snyder (Research Attorney) | $175 | 5.2 | $856.00 |
| Maddie Pipitone (Research Attorney) | $175 | 1.5 | $262.50 |
| Julie Weber (Research Attorney) | $150 | 1.7 | $254.06 |
| Rachel Hostetler (Paralegal) | $250 | 2.7 | $675.00 |
| Alexis Kovacs (Paralegal) | $290 | 16.1 | $4,764.47 |
| David Margolis (Paralegal) | $353 | 18.5 | $6,436.45 |
| **TOTAL** | | | **$824,322.03** |

(Fraser Decl., Ex. E.)

      1.     *Reasonable Hourly Rate*

Farmacy requests hourly rates for its attorneys that range from $150 per hour to $674 per hour. To determine whether hourly rates are reasonable, courts consider "the rates prevailing in that district for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *5 (C.D. Cal. Mar. 24, 2015) (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)), *aff'd*, 847 F.3d 657 (9th Cir. 2017). The party seeking attorneys' fees may satisfy its burden to show that the proposed hourly rate is reasonable by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *See id.* at 980–81. "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro. Life Ins. Co.*,

380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

In support of its attorneys' requested rates, Farmacy submits, among other things: (1) a declaration from its counsel at the law firm Greenberg Traurig LLP ("GT"); (2) invoices from GT detailing the time spent on tasks in Farmacy's defense of this action; and (3) various case law. (*See* Mot. 18–25; Fraser Decl.) Farmacy's primary defense team (Jeffrey Joyner, John Kim, Colin Fraser, and James Ryerson) are experienced litigators with substantial experience in complex litigation and intellectual property matters. (*See* Mot. 19; Fraser Decl. ¶ 23.) The lead shareholders (i.e., partners) on the defense team, Joyner and Kim, have over twenty-five and twenty-four years of experience, respectively, and seek $675 per hour for their work on this case. (Fraser Decl. ¶ 23.) The primary associates on the defense team, Ryerson and Fraser, each have over eleven years of complex commercial litigation experience and seek $450 per hour for their work. (*See id.*) The remaining attorneys at GT who worked on this matter seek hourly rates ranging from $150 per hour (research attorney) to $450 per hour (senior associate). (*See id.*)

In opposition, Arcona fails to submit evidence that rebuts the reasonableness of GT's *rates*; instead it contends that, generally, this case was not as complex as other trademark cases because "[t]he claims in this case all revolved around" the "EYE DEW" mark and involved a common core of facts and legal theories. (*See* Opp'n 24.) Thus, essentially, Arcona argues that the rates Farmacy seeks for its attorneys do not match the complexity of the legal issues presented in this case. The Court agrees with Arcona.

Here, Farmacy's lead defense counsel has experience in intellectual property cases and obtained a favorable result. But in light of the frivolousness of Arcona's legal position with respect to the counterfeiting claim, this case was not as complex as the cases Farmacy cites in support of its attorneys' requested hourly rates. Thus, considering the evidence submitted and based on the Court's knowledge and

experience of such prevailing rates for similar services of lawyers of reasonably comparable skill, experience, and reputation, the Court finds that $500 is a reasonable hourly rate for Joyner and Kim (the lead shareholders), and $365 is a reasonable hourly rate for Fraser, Ryerson (the primary associates). *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (agreeing with other circuit courts that "it is proper for a district court to rely on its own familiarly with the legal market" in determining a reasonable rate). The remaining attorneys may recover at their requested rates. Because Farmacy provides scant evidence regarding the requested paralegal rates, the Court declines to award attorneys' fees for the work done by paralegals in this action.

In sum, the Court bases the lodestar on the following adjusted hourly rates:

| Timekeeper | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Jeff Joyner (Shareholder) | $500 | 264.1 | $132,050 |
| John Kim (Shareholder) | $500 | 179.6 | $89,800 |
| Lisa Li (Associate) | $450 | 66.4 | $29,880 |
| Colin Fraser (Associate) | $365 | 422.5 | $154,212.50 |
| Shauna Norton (Associate) | $328 | 11.3 | $3,706.40 |
| Matthew Demartini (Associate) | $295 | 60.2 | $17,759 |
| Jason Hicks (Associate) | $365 | 6.4 | $2,336 |
| Jennifer Kim (Associate) | $260 | 8.8 | $2,288 |
| Bethany Rabe (Associate) | $375 | 21 | $7,875 |
| James Ryerson (Associate) | $365 | 742.6 | $271,049 |
| Adam Masarek (Research Attorney) | $185 | 1.1 | $203.50 |
| Trista Snyder (Research Attorney) | $175 | 5.2 | $910 |
| Maddie Pipitone (Research Attorney) | $175 | 1.5 | $262.50 |
| Julie Weber (Research Attorney) | $150 | 1.7 | $255 |
| **TOTAL** | | | **$712,587** |

Thus, purely based on Farmacy's counsels' reported number of hours, the lodestar would be $712,587. However, the Court must still consider whether the number of hours expended was reasonable.

*2. Reasonable Number of Hours Expended*

Farmacy seeks fees for the 1,792.4 hours their attorneys billed for their work on this case. Arcona contends that the hours billed by Farmacy's attorneys are excessive—pointing to a few block-billed time entries, which show that some of Farmacy's attorneys billed as much as 14.5 to 16.5 hours in a single time entry for work performed on several tasks. (*See* Opp'n 24.)

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley*, 461 U.S. at 434). "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates*, 987 F.2d at 1399 (internal quotation marks omitted). Additionally, courts may reduce block-billed hours because they make it difficult for the court to determine the time spent on a particular assignment. *See Welch*, 480 F.3d at 948.

Upon review of GT's billing entries, the Court finds that many of the entries submitted by James Ryerson and Colin Fraser (who billed a combined 1165.1 hours on this matter) are block-billed time entries. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch*, 480 F.3d at 945 n.2 (internal quotation marks omitted). Indeed, after combing through the thousands of time entries submitted in support of this Motion, the Court identified

199.8 block-billed hours from Ryerson and 166.4 block-billed hours from Fraser. (*See, e.g.*, Fraser Decl., Ex. D (Ryerson billing 16.5 hours in one time entry to "[e]dit and finalize motions in limine; prepare exhibits and declarations in support of the same; prepare motion to seal and supporting documents (flag confidential information for sealing and redaction); edit and finalize pretrial submissions.").) As the Court cannot discern from these block-billed entries whether the amount of time expended on each task was reasonable, the Court makes an across-the-board percentage cut of 30% off of Ryerson and Fraser's 366.2 blocked-billed hours.[3] *See, e.g.*, *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming reduction of 30% to account for block billing).

In addition, the Court applies a 25% reduction across-the-board on all hours billed by Farmacy's attorneys for excessive billing. *See Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *1 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees by 25% for excessive billing). The hours requested by Farmacy's attorneys are excessive for at least two reasons.

First, Farmacy's attorneys used five high-billing partners and senior associates to perform the bulk of the work on this matter. For example, partners with over twenty years of experience billed for performing tasks such as "review[ing] pretrial documents and motions in limine and assist[ing] with filing the same with the court"; tasks that could be handled by a junior associate that bills at a lower hourly rate. Second, descriptions of the work performed suggest that the hours spent on tasks by Farmacy's attorneys were excessive and duplicative. For example, at least eight attorneys billed over 119 hours for researching, drafting, and revising motions in limine. (Fraser Decl., Ex. D.) Given the substantial experience of the attorneys on this matter and the simplicity of the issues involved in this case, the substantial amount time spent performing tasks was unnecessary. As the *Wynn* court concluded,

---

[3] 1165.1 (Ryerson's and Fraser's total billed hours) – 109.8 (30% of 366.2 block-billed hours) = 1055.3 total hours.

"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." *Wynn*, 2015 WL 3832561, at *6.

Accordingly, based on the calculations outlined above, Farmacy's attorneys shall be awarded reasonable attorneys' fees in the amount of **$504,382.43**.

## C. Costs

Farmacy also requests $30,799.01 in costs. (Mot. 24–25.) Farmacy's attorneys assert that these costs can be categorized as follows:

| Costs | Amount |
|---|---|
| Computerized Research | $21,496.78 |
| Photocopy/Printing | $602.90 |
| Messenger/Delivery | $133.49 |
| Deposition Videography | $4,315.00 |
| Travel Costs | $4,250.84 |
| **TOTAL** | **$30,799.01** |

(Fraser Decl. ¶¶ 26–33).

Under the Lanham Act, the prevailing party in an exceptional case may also be awarded reasonable costs. 15 U.S.C. § 1117(a). "The Lanham Act does not, however, provide the 'explicit statutory authority' required to award litigation expenses beyond the six categories of 'costs' specified by Congress in the general costs statute, 28 U.S.C. §§ 1821, 1920." *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 677 (9th Cir. 2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877–78 (2019)).

Here, Farmacy relies on outdated cases in support of its request for costs, (*see* Mot. 24–25), and it fails to provide any authority for the proposition that it may recover costs for computerized research, messenger/delivery services, deposition videography, and travel. Accordingly, Farmacy may recover only the $602.90 that it seeks for photocopying and printing costs. *See* 28 U.S.C. § 1920.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Farmacy's Motion. (ECF No. 153.)   The Court awards Farmacy attorneys' fees in the amount of $504,382.43 and costs in the amount of $602.90, for a total award of $504,985.33.

**IT IS SO ORDERED.**

June 14, 2021

_____
			**OTIS D. WRIGHT, II
			UNITED STATES DISTRICT JUDGE**